IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 25, 2009

## STATE OF TENNESSEE v. WILLIAM HAROLD JONES, ALIAS

**Appeal from the Criminal Court for Knox County
Nos. 84029, 85713, 86366, 86980     Kenneth F. Irvine, Jr., Judge**

**No. E2008-01745-CCA-R3-CD - Filed July 14, 2009**

The Defendant, William Harold Jones,[1] appeals the revocation of his enhanced probation sentences in the Criminal Court for Knox County. He pled guilty to two charges of theft, a Class D felony, for which he received two consecutive, suspended sentences of four years; theft, a Class E felony, for which he received a consecutive suspended sentence of three years; and reckless endangerment, a Class E felony, for which he received a suspended sentence of two years, with a total effective sentence of eleven years of enhanced probation as a Range II, multiple offender. On appeal, the Defendant contends the trial court erred in revoking his probation and ordering him to serve his sentences in confinement. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Michael Anthony Graves, Knoxville, Tennessee (at trial), for the appellant, William Harold Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The record reflects the following events occurred on May 2, 2008. In case number 84029, the Defendant pled guilty to theft, a Class D felony, and received a suspended sentence of four years on enhanced probation. The sentence would expire May 2, 2012. Several other charges were dismissed. In case 86366, the Defendant pled guilty to theft, a Class D felony, and received a second four-year suspended sentence of enhanced probation to be served consecutively to the sentence in

---

[1] The indictments in two cases use the name "William Harold Jones, Alias," while the indictments in the two other cases use the name "William H. Jones, Alias." We will use the Defendant's full name.

case 84029. This second sentence would expire on May 2, 2016. Another charge was dismissed. In case 86980, the Defendant pled guilty to theft, a Class E felony, for which he received a three-year suspended sentence of enhanced probation, to be served consecutively to that in case 86366, and that would expire on May 2, 2019. Other charges were dismissed. In case 85713, the Defendant pled guilty to reckless endangerment, a Class E felony, and received a two-year suspended sentence of enhanced probation, to run concurrently to the sentence in case 86366 and to expire on May 2, 2014. Other charges were dismissed.

On June 25, 2008, a probation revocation warrant was filed alleging that the Defendant's whereabouts were unknown and that he was considered to have absconded; that the Defendant failed to report to enhanced probation for intake on June 23, 2008; and that the Defendant failed to enter the Jellinek program on June 20, 2008. An amended probation revocation warrant was filed on July 11, 2008, alleging that the Defendant had been charged with the offense of criminal impersonation on June 26, 2008, and that he had violated curfew when he was arrested that evening.

At the probation revocation hearing, Lisa Mooneyham, the Defendant's probation officer, testified that the Defendant had been on enhanced probation during his time at CenterPoint. She said the Defendant completed this program and was discharged on June 17, 2008. She said she told him to report to her office on the following Monday, June 23, 2008. She said she also told him to enter Jellinek on Friday, June 20, 2008, when the facility would have a bed for the Defendant. She said she had spoken with the Jellinek program's director about obtaining a bed for the Defendant. She said that the director told her the Defendant had wanted to enter the program on Monday, June 23, 2008, but that the director told the Defendant he needed to arrive when the bed was available Friday, June 20.

Ms. Mooneyham testified that the Defendant did not come to her office on June 23, 2008, as instructed, and she said she filed a probation violation warrant after the Defendant did not appear on that date. She said she filed an amended probation violation warrant alleging that the Defendant had been arrested for criminal impersonation and that the Defendant had violated his curfew by being arrested after 6:00 p.m. She said she informed the Defendant of the program's rules, including that curfew was at 6:00 p.m., in an earlier case in which she found him to be unsuited for enhanced probation. She said she did not have the opportunity to inform the Defendant of this condition in the current four cases because he did not appear at the program's intake. She said the Defendant violated the terms of enhanced probation by being out after curfew and by failing to report. She said a probationer could not be successful on enhanced probation if the probationer did not, at the very minimum, report to probation. She said the program could not offer the Defendant anything if he could not follow through with the simplest things, but she said she had been surprised when the Defendant had not reported and had not entered Jellinek because he had kept in contact with her upon leaving CenterPoint to go to his father's residence.

On cross-examination, Ms. Mooneyham testified that she waited to file a probation revocation warrant to see whether the Defendant would come to her office or contact her to explain why he did not enter the Jellinek program. She said that the program had a long waiting list, which was the reason the Defendant could not have a bed immediately upon his discharge from CenterPoint. She said the Defendant, however, obtained a bed in Jellinek quickly after his discharge.

-2-

She said the Defendant had telephoned her two to three times and said he was staying at his father's residence, for which he provided an address. She said he kept in contact and seemed eager to comply with the terms of his enhanced probation. She said the Jellinek program's director told her that the Defendant told him he had to do something with his father and asked to enter the program on a Monday instead of the preceding Friday.

The Defendant, William Howard Jones, testified that he was on enhanced probation and completed the CenterPoint program on Tuesday, June 17, 2008. He said he telephoned Jellinek the preceding Monday morning, at which time he said he was told the program did not have a bed for him and to call back the next day. He said he then went to his parents' residence and informed both Jellinek and his probation officer where he would be staying. He said Jellinek notified him on Wednesday or Thursday that a bed had become available. He said he was in contact with them on a regular basis between June 17 and June 20, 2008. He said that on June 20, 2008, when Jellinek informed him that a bed had become available, he said that his father was sick and that he had to take his father to get his medications. He said he asked Jellinek if he could enter the program on Monday, June 23, instead of Friday, June 20. He said that his father was paralyzed on one side after a stroke and that he had to feed and bathe him. He said that without the Defendant's care during those days, his father would not have taken his medications and would have starved to death. He said he wanted these few days before entering the program to arrange for a caretaker for his father. He said, however, that he did not think he relayed this information to his probation officer, although he said he told her where he was staying. He said that he wanted another chance to enter the Jellinek program and that he would comply with the requirements of that program and enhanced probation. He said he understood that he "messed up" by not reporting to Jellinek and to his probation officer, but he claimed that the problem would not have occurred if the bed had been ready upon his discharge. He said he was trying to find employment in advance of the Jellinek program and had submitted job applications at a few businesses. He said that the program would allow him to work and that he thought he had told his probation officer about his intention to obtain work before entering the program.

On cross-examination, the Defendant testified that his father's stroke had occurred in December, not June, and was not a new condition. He said he was scared and did not tell his probation officer about his family's circumstances. He said he knew he was to report on June 23 to his probation officer but did not report. He said he telephoned the office and left a message. He admitted he was arrested on June 26, 2008, but he said he did not know at what time. He said he knew his attorney "went out on a limb" to obtain enhanced probation for him. He said his attorney told him that the presentence report was not good, and he agreed this meant enhanced probation did not want him in their program. He agreed that he did not report to his probation officer and that he was arrested.

The trial court revoked the Defendant's enhanced probation in each of the four cases, after finding that the Defendant had violated the terms of his probation by not reporting to his probation officer as required on June 23, 2008, and by not entering the Jellinek program when required to do so. The court also stated that the Defendant apparently had given a false social security number to the arresting officers. The trial court said the Defendant was a Range II offender with an extensive

criminal history. He said that while the Defendant had successfully completed some of his previous sentences of probation, probation had been revoked in other cases.

The Defendant contends that the trial court abused its discretion in revoking the Defendant's probation. He contends the Defendant's failure to report to the probation officer on June 23, 2008, and his failure to report to the Jellinek program on June 20, 2008, were insufficient bases upon which to revoke the Defendant's probation. He cites no law for this claim. The State replies that the trial court did not abuse its discretion in revoking the Defendant's probation because the Defendant: (1) admitted he failed to report to his probation officer on June 23, 2008, (2) admitted he failed to enter Jellinek, as required, on June 20, 2008, and (3) admitted he had been arrested on June 26, 2008.

Relative to when a trial court may revoke probation and to the standard of review in an appeal of such an action, in State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991), our supreme court stated:

> We take note that a trial judge may revoke a sentence of probation or a suspended sentence upon a finding that the defendant has violated the conditions of his probation or suspended sentence by a preponderance of the evidence. T.C.A. § 40-35-311. The judgment of the trial court in this regard will not be disturbed on appeal unless it appears that there has been an abuse of discretion. State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

We hold that the evidence does not preponderate against the trial court's determination that the Defendant had violated the terms of his probation and that the evidence justified the trial court's revoking the Defendant's probation and ordering him to serve his sentences in confinement. The Defendant's probation officer testified that the Defendant did not report to her and did not enter the Jellinek program as required. The Defendant testified that he did not report to his probation officer on June 23 and that he did not enter the Jellinek program on June 20, which he said he knew he was required to do, and both of which were bases for the trial court to revoke his probation. Given the Defendant's criminal history along with his present failings, we conclude the trial court did not abuse its discretion in revoking the suspended sentences.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

JOSEPH M. TIPTON, PRESIDING JUDGE